## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**ROBERT KENNETH WALKER,**

      **Plaintiff,**

**v.**                                     **Case No.: 2:20-cv-00196**

**ANDREW M. SAUL,**
**Commissioner of the**
**Social Security Administration,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Brief in Support of Judgment on the Pleadings and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in his favor. (ECF Nos. 15, 16).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's request for

judgment on the pleadings be **DENIED**; the Commissioner's request for judgment on the pleadings be **GRANTED**; the Commissioner's decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

## I.    <u>Procedural History</u>

In March 2017, Robert Kenneth Walker ("Claimant"), completed applications for DIB and SSI, alleging a disability onset date of June 1, 2016 due to "mega cisterna magna/retrocerebellar arachnoid cyst, arachnoid cyst posterior fossa, cervicalgia, chronic migraines and headaches (NDPH), left lumbosacral pain, neuritis, radiculopathy, low back pain, myofascial pain, and gout." (Tr. at 21, 288). The Social Security Administration ("SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 21). Claimant requested an administrative hearing, which was held on November 5, 2018 before the Honorable Raymond Rodgers, Administrative Law Judge ("the ALJ"). (Tr. at 37-56). During the hearing, Claimant amended his alleged onset date to October 20, 2016. (Tr. at 40, 275). On February 5, 2019, the ALJ issued a written decision, finding that Claimant was not disabled as defined by the Social Security Act. (Tr. at 18-35). The ALJ's decision became the final decision of the Commissioner on January 22, 2020 when the Appeals Council denied Claimant's request for review. (Tr. 3-9).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 11, 12). Claimant filed a Brief in Support of Judgment on the Pleadings, and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 15, 16). Consequently, the matter is fully briefed and ready for resolution.

II.    **Claimant's Background**

Claimant was 37 years old on his amended alleged onset date and 39 years old on the date of the ALJ's decision. (Tr. at 29). He communicates in English; has a high school education; and previously worked as fast food manager, auto mechanic, and sales associate and stock clerk at Walmart. (Tr. at 52, 287, 289).

III.    **Summary of ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2019. (Tr. at 23, Finding No. 1). At the first step of the sequential evaluation, the ALJ found that Claimant had engaged in substantial gainful activity since October 20, 2016, his amended alleged onset date. (*Id.*, Finding No. 2). Nevertheless, the ALJ proceeded with the sequential evaluation and determined at the second step of the evaluation that Claimant had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative changes

4

involving the hips, headaches, history of arachnoid cyst, and obesity. (Tr. at 24, Finding No. 3).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 24-25, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to: lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for six hours in an eight hour workday; occasional climbing of ramps or stairs but may never climb ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling and crouching; no crawling; must avoid exposure to very loud noise as defined by Selected Characteristics of Occupations (SCO) code and extreme bright lighting; must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gases; no exposure to hazardous machinery; and no exposure to unprotected heights.

(Tr. at 26-29, Finding No. 5).

At the fourth step, the ALJ determined, with the assistance of a vocational expert ("VE"), that Claimant could perform his past relevant work as a fast food manager. (Tr. at 29, Finding No. 6). In the alternative, the ALJ reviewed Claimant's past work experience, age, and education in combination with Claimant's RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 29). The ALJ considered that (1) Claimant was born in 1979 and was defined as a younger individual; (2) Claimant had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of his transferable job skills. (*Id*.). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in

5

significant numbers in the national economy, including work as a customer service employee, non-postal mail clerk, or price marker. (Tr. at 29-30). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 30, Finding No. 7).

## IV.    **Claimant's Challenges to the Commissioner's Decision**

Claimant asserts two challenges to the Commissioner's decision, both of which pertain largely to Claimant's headache impairment. First, Claimant argues that the ALJ erred in evaluating his subjective symptoms because the ALJ allegedly parsed the record for evidence that he found to be inconsistent with the intensity and frequency of Claimant's headache symptoms while failing to address the evidence that substantiated Claimant's allegations. (ECF No. 15 at 8-11). Second, Claimant argues that the ALJ erred in not considering Social Security Ruling ("SSR") 19-4p, or, alternatively, the Appeals Council erred in not granting review in light of the new ruling. (*Id*. at 12-13).

In response, the Commissioner argues that Claimant simply invites the Court to reweigh the evidence and reach its own conclusions, rather than Claimant identifying any errors in the decision. (ECF No. 16 at 8). The Commissioner contends that the ALJ thoroughly supported his finding that the medical evidence and Claimant's activities did not indicate that Claimant's headaches were disabling. (*Id*.). As to Claimant's argument that SSR 19-4p should have been applied, the Commissioner notes that the ruling went into effect after the ALJ's decision. (*Id*. at 9). The Commissioner points out that the ruling does not make any statement that it should be applied retroactively, and the Supreme Court of the United States has held that administrative rules do not apply retroactively unless authorized by Congress, and the rule in question must explicitly state that it has

6

retroactive effect. (ECF No. 16 at 9). The Commissioner further notes that the Appeals Council explicitly stated in its decision denying review that it had applied all rules and regulations in effect at the time of the decision. (*Id.*. at 10). Given the fact that SSR 19-4p was in effect at the time of the Appeals Council's decision, the Commissioner contends that the Appeals Council plainly considered the ruling. (*Id.*). Furthermore, the Commissioner states that since the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner, and the Appeals Council's decision is not subject to judicial review. (*Id.*).

## V.    **Relevant Evidence**

The undersigned has examined all of the evidence before the Court. The information that is most pertinent to Claimant's challenges is summarized as follows:

### A. *Treatment Records*

On November 28, 2016, Claimant presented to C. L. Smith, PA-C, at PARS Neurology regarding a diagnosis of migraine/headache. (Tr. at 361). Claimant's symptoms were unchanged since his last visit on August 1, 2016. (*Id.*). He reported 15 to 20 headaches per month. (*Id.*). Claimant received Botox injections on one occasion, and although the injections decreased his headaches for one to two months, he was unsure if he wanted to continue the treatment. (*Id.*). Claimant was taking the medication Imitrex, as needed, and zonisamide twice daily to treat his headache symptoms. (*Id.*). His brain MRI showed a stable cyst with no acute findings. (*Id.*). Claimant denied vision or hearing symptoms, and his physical examination was normal. (Tr. at 363-64). P.A. Smith diagnosed Claimant with headache, migraine without aura, and arachnoid cyst, and he scheduled Claimant for routine follow-up. (Tr. at 364).

Claimant presented to David Watson, M.D., at the WVU Headache Center on April 20, 2017. He reported having four severe headaches per month, and he stated that he had three-to four-headache days and three-to-four headache-free days each week. (Tr. at 628). Claimant stated that Imitrex tablets helped control his less severe headaches, if he caught them early, and self-administered Imitrex injections provided good abortive control. (*Id*.). Claimant's physical examination again indicated no abnormalities. (Tr. at 629-30). Dr. Watson renewed Claimant's headache prescriptions and added Cymbalta to his medication regimen. (Tr. at 630).

On July 27, 2017, Claimant presented to C. L. Brunetti, PA-C, at PARS Neurology. He still complained of 15 to 20 headaches per month in the frontal region with associated nausea, vomiting, photophobia, and phonophobia. (Tr. at 801). Claimant was instructed to follow-up with Dr. Watson until he was placed on an effective treatment regimen. (Tr. at 804).

Claimant told Dr. Watson on October 23, 2017 that he had the same frequency of headaches, but his headaches were less severe since he started taking Cymbalta. (Tr. at 639). Claimant expressed that Cymbalta also significantly relieved his back pain, which was important to him because he recently returned to work and needed to lift heavy items in the lawn care center at Walmart. (*Id*.). Claimant stated that he typically took nine Imitrex pills and two-to-three Imitrex injections per month, and the medication provided good symptom relief. (*Id*.). He used tizanidine as an abortive medication on rare occasions. (*Id*.). Claimant reported a total of 15 headaches per month, only two of which were severe, and 15 headache-free days per month. (Tr. at 640). He stated that he experienced nausea and sensitivity to light and smell when he had a headache. (*Id*.). On

8

a ten-point scale, Claimant rated his mild headaches five to six and his severe headaches ten. (*Id.*). His response to abortive medications was good, and he had no side effects from medication. (*Id.*). Claimant's examination results were normal, and Dr. Watson prescribed medications to treat Claimant's symptoms. (Tr. at 641). Regarding personal matters, Claimant noted that his divorce was finalized, and he was raising his five children. (Tr. at 640).

Claimant received another round of Botox injections on June 5, 2018. (Tr. at 679). However, he stated on August 6, 2018 that Botox did not provide any substantial relief, and he still had one or more migraines per week that lasted from hours up to a migraine that lasted for two days. (Tr. at 716). Claimant reported that he would lie down to decrease the pain, but he was unable to lie down every time because he was taking care of his five children on his own. (*Id.*).

### B. Evaluations and Opinions

On April 24, 2017, state agency physician Cindy Osborne, D.O., assessed Claimant's RFC based upon her review of Claimant's records. She concluded that, despite Claimant's allegations of migraine headaches and back pain, Claimant was able to perform work at the light exertional level with frequent climbing of ramps and stairs and balancing and other occasional postural activities. (Tr. at 93-94). Dr. Osborne opined that Claimant should avoid concentrated exposure to temperature extremes, vibration, and hazards. (Tr. at 94). Thomas Lauderman, D.O., affirmed this assessment on July 8, 2017. (Tr. at 117-18).

### C. Prior ALJ Decision

On May 31, 2016, David Thompson, Administrative Law Judge ("ALJ Thompson"),

issued a decision on Claimant's prior DIB and SSI applications for the period beginning on October 21, 2013. ALJ Thompson found that Claimant's headaches/alleged migraines were a severe impairment. (Tr. at 63). However, despite Claimant's headaches and other impairments, ALJ Thompson concluded that Claimant could perform a reduced range of work at the light exertional level with no concentrated exposure to noise above Level IV, fumes, dusts, gasses, unprotected heights, or unprotected moving machinery. (Tr. at 65).

### D. Claimant's Statements

Claimant completed an Adult Function Report on April 1, 2017. He wrote that, in a typical day, he arose at 6:30 a.m. to help his kids get ready for school, and then he went back to bed from 7:50 a.m. until 9:00 a.m. or 10:00 a.m. (Tr. at 298). When he awoke, he ate breakfast, helped with laundry, and watched television until lunchtime. (*Id.*). After lunch, he waited for his kids to return home from school and helped them get ready for bed in the evening. (*Id.*). Claimant alleged that he was "up all night" due to headaches. (*Id.*). However, he noted that he did not require help with personal care, other than sometimes to put his underwear and pants on, and he did not require reminders to take medications or care for his personal needs. (Tr. at 298-99). Claimant did laundry every few days, mowed, and grocery shopped a few times per month for two-to-three hours each time with his wife's help. (Tr. at 299, 300). Claimant stated that he could not maintain any of his previous hobbies other than watching television because he would start "hurting," and he did not socialize. (Tr. at 301). He reported that his sight and concentration were affected when he had a migraine headache. (Tr. at 302).

On June 8, 2017, Claimant completed another Adult Function Report. At that time, he was working part time and going through a divorce. (Tr. at 323). He cared for his five

children with help from his mother-in-law, and his wife helped him a few days per week. (Tr. at 323). He stated that he did what he could, and his mother-in-law and wife helped clean the house, do laundry, and bathe the children. (*Id.*). On days that he was scheduled to work, he awoke at 6:00 a.m., got dressed, took his medications, and waited for someone to watch his children so that he could work from 7:00 a.m. until 2:00 p.m. (Tr. at 317). He still did not have any problems with personal care and did not require reminders to take medications. (Tr. at 317, 318). He drove, went out independently, and shopped for groceries and other items for three-to-four hours per week. (Tr. at 319). Claimant also mowed and did laundry with help. (Tr. at 318).

On September 26, 2018, Claimant completed a Work History Report, noting that he worked as a sales associate at Walmart since April 2017. His duties included waiting on customers, running a cash register, and walking from his department to the back of the store to get rid of trash and to stock shelves. (Tr. at 339-40).

Claimant testified during his administrative hearing on November 5, 2018. He stated that Imitrex eased his headaches, but nothing worked when his headaches were severe. (Tr. at 43). He completed three rounds of Botox injections, but claimed that the benefit wore off after a couple of weeks. (*Id.*). He was scheduled to receive Botox injections every three months. (*Id.*). Claimant returned to work in April 2017, and he worked 25 to 30 hours per week in the sporting goods department at Walmart. (Tr. at 44). He testified that he only missed work once for a severe headache, but his baseline headaches reportedly caused him to work slower or stand or sit in one place at work. (Tr. at 44, 49). Claimant admitted that he never got in trouble for working at a slower pace, stating that he was "pretty good, at hiding for right now." (Tr. at 50). Claimant testified that he had

three-to-four severe headaches per month before beginning treatment at the WVU Headache Clinic, and he now had two-to-three severe headaches and 10 to 12 baseline headaches per month. (Tr. at 45, 49). He also experienced associated nausea and photophobia. (Tr. at 45). Claimant alleged that he could not really "do anything" during his severe headaches, and he had a headache two months earlier that lasted for two days. (*Id.*). Claimant noted that, when he had headaches, his wife or mother-in-law had to help with the kids, and he reportedly missed his son's grade school graduation due to a headache. (Tr. at 47-48).

## VI.    <u>Standard of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the record and determine whether it is adequate to support the conclusion of the Commissioner. *Hays*, 907 F.2d at 1456. When conducting this review, the Court does not re-weigh evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589

(4th Cir. 2001) (citing *Hays*, 907 F.2d at 1456)). Moreover, "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) ... requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted). Thus, the relevant question for the Court is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig*, 76 F.3d at 589).

## VII.    Discussion

Claimant challenges the ALJ's analysis of his headache impairment. In particular, he contends that the ALJ overstated or misrepresented his daily activities when assessing his subjective symptoms and that the ALJ and Appeals Council should have considered SSR 19-4p. Each argument is discussed below, in turn.

### A.  Subjective Symptom Analysis

Under the applicable Social Security rulings and regulations, an ALJ is obliged to use a two-step process when evaluating the credibility of a claimant's subjective statements regarding the effects of his or her symptoms. 20 C.F.R. §§ 404.1529, 416.929 (effective March 27, 2017). First, the ALJ must consider whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms, including pain. *Id*. §§ 404.1529(a), 416.929(a). In other words, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (effective March 16, 2016). Instead, evidence of objective

"[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques" must be present in the record and must demonstrate "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b).

Second, after establishing that the claimant's conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id.* §§ 404.1529(a), 416.929(a). If the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence, the ALJ must consider "other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms," including a claimant's own statements. SSR 16-3p, 2016 WL 1119029, at *5-*6. In evaluating a claimant's statements regarding his or her symptoms, the ALJ must consider "all of the relevant evidence," including: the claimant's history; objective medical findings obtained from medically acceptable clinical and laboratory diagnostic techniques; statements from the claimant, treating sources, and non-treating sources; and any other evidence relevant to the claimant's symptoms, such as, evidence of the claimant's daily activities, specific descriptions of symptoms (location, duration, frequency and intensity), precipitating and aggravating factors, medication or medical treatment and resulting side effects received to alleviate symptoms, and other factors relating to functional limitations and restrictions due to the claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); *see also Craig*, 76 F.3d at 595; SSR 16-3p, 2016 WL 1119029, at *4-*7.

SSR 16-3p provides further instruction on what type of evidence should be considered when the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence. SSR 16-3p, 2016 WL 1119029, at *6. The ruling presents an extensive list of evidence that may prove probative and notes that valuable evidence to consider may include (1) a longitudinal record of any treatment and its success or failure, including any side effects of medication and (2) indications of other impairments, such as potential mental impairments, that could account for an individual's allegations. *Id.*

> In *Hines v. Barnhart*, the Fourth Circuit stated that:
>
> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing *Craig*, 76 F.3d at 595). The ALJ may not reject a claimant's allegations of intensity and persistence solely because the available objective medical evidence does not substantiate the allegations; however, the lack of objective medical evidence may be one factor considered by the ALJ. SSR 16-3p, 2016 WL 1119029, at *5.

Ultimately, "it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for [an ALJ] simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can

assess how the [ALJ] evaluated the individual's symptoms." *Id.* at *9. SSR 16-3p instructs that "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person;" rather, the core of an ALJ's inquiry is "whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* at *10.

When considering whether an ALJ's evaluation of a claimant's reported symptoms is supported by substantial evidence, the Court does not replace its own assessment for that of the ALJ; rather, the Court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, reach independent determinations as to the weight to be afforded to a claimant's report of symptoms, or substitute its own judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

In this case, the ALJ clearly performed the two-step process. The ALJ discussed Claimant's allegations of migraine headaches that were aggravated by bright lights and which interfered with his sight and concentration. (Tr. at 26). Ultimately, after considering the evidence, the ALJ concluded that Claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (*Id.*). However, the ALJ found that Claimant's statements concerning the intensity, persistence, and

16

limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record" for several reasons. First, the ALJ noted that Claimant's allegations were inconsistent with his daily activities during the relevant period. The ALJ noted that Claimant's activities included household chores, such as food preparation and lawn maintenance; caring for five minor children; driving; shopping in stores; and maintaining a regular work schedule at levels above substantial gainful activity (SGA), which included waiting on customers, running a cash register, stocking shelves, and taking out trash. (Tr. at 23, 27). In addition, the ALJ thoroughly discussed Claimant's medical treatment for headaches, noting some improvement with Botox injections and Imitrex, but acknowledging that Claimant continued to report frequent headaches. (Tr. at 27). The ALJ remarked that, despite Claimant's complaints of as few as five headache-free days per month, he remained able to perform the activities noted above, he consistently showed no acute distress during medical appointments, and there was no evidence of emergency treatment for severe migraine pain. (Tr. at 28). The ALJ further noted that Claimant did not have any significant cognitive impairments that interfered with his activities of daily living, as evidenced by the fact that he did not require reminders to take his medication or perform personal care and the fact that his ability to handle his finances had not changed. (*Id.*).

Claimant does not dispute the ALJ's analysis of the medical evidence. Rather, he primarily focuses on the ALJ's analysis of his activities of daily living, alleging that the ALJ misrepresented his level of functioning. In a recent decision, the Fourth Circuit emphasized that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring

evidence that points to a disability finding." *Arakas v. Comm'r, Soc. Sec. Admin.*, No. 19-1540, 2020 WL 7331494, at *9 (4th Cir. Dec. 14, 2020) (citation and markings omitted). As relevant to this matter, the Fourth Circuit made clear that an ALJ cannot selectively cite evidence concerning the tasks that a claimant can perform while improperly disregarding qualifying or contrary evidence regarding the claimant's ability to perform those tasks. *Id.* at *11. In *Arakas*, the ALJ erred by relying on the activities that the claimant could perform while failing to account for other significant evidence demonstrating the claimant's limited physical capacities. *Id.* Specifically, the ALJ noted that the claimant could use a computer, perform household chores, drive, shop, walk for exercise, cook, make her bed, do laundry and yard work, and paint. *Id.* at *10. However, the ALJ did not mention or address the claimant's considerable testimony regarding the difficulties that she had performing those tasks, such as that her daughter had to perform most of the housework, as well as the grocery shopping when the claimant was not physically able; and that the claimant could not do anything after noon due to fatigue; could only walk for 30 minutes "on a good day," but was "done for the day" after walking; and had to sleep in a neck brace. *Id.* at *11. In *Arakas*, the Fourth Circuit concluded that substantial evidence did not support the ALJ's conclusion that the claimant's subjective complaints were inconsistent with her daily activities, because the record, when read as a whole, revealed no inconsistency between the two. *Id.* at *11. Overall, the Fourth Circuit noted that, if the claimant's qualifying statements were properly considered, it was clear that "she could perform only minimal daily activities that in no way suggested any ability to engage in full-time work on a sustained basis." *Id.* at *12.

Similarly, in this case, Claimant argues that the ALJ selectively cited parts of

18

function reports to conclude that his daily activities belied his allegation of debilitating headache pain, although, according to Claimant, the function reports read as a whole actually support his allegations. (ECF No. 15 at 9-10). Claimant notes that the ALJ cited that he could perform lawn maintenance, prepare food, and care for five minor children. (*Id.*). However, Claimant points out that the ALJ did not mention his statements that he could no longer play with his children outside, do simple things like bathe them, maintain his former hobbies of working on cars and going to car shows, do all of his yardwork, or perform "[p]retty much all activities." (*Id.* at 10). Claimant also cites his statements that he received help from his wife and mother-in-law who lived next door to care for his children; took breaks while he mowed; and could not work full time. (*Id.*).

Claimant is correct that the ALJ did not explicitly mention each of his qualifying statements. However, unlike *Arakas* and similar decisions, the ALJ's analysis does not reflect misrepresentations about Claimant's activities and selective reliance on certain evidence at the exclusion of the overall record. The ALJ was persuaded, in great part, by the fact that Claimant worked during his alleged period of disability. Indeed, Claimant continued to work 25 to 30 hours per week through the date of his administrative hearing, and he had, by that time, maintained gainful employment for 19 months. (Tr. at 44). He only missed work once due to a severe migraine, and he was never reprimanded or disciplined in any manner at work regarding his alleged limitations related to baseline migraines. (Tr. at 44, 49). Unlike the ALJ in *Arakas*, the ALJ in this case thoroughly and correctly considered Claimant's work activity, noting that Claimant worked at levels above substantial gainful activity during various quarters of his alleged disability, and the ALJ specifically discussed the tasks that Claimant performed at work. (Tr. at 23, 27, 28). The

claimant in *Arakas*, by contrast, only worked around four hours per week, which the ALJ overstated as amounting to two four-hour days. In this case, Claimant worked 25 to 30 hours per week, as previously noted. While the ALJ did not suggest that it amounted to full time employment, the ALJ correctly considered Claimant's work activity as a factor in evaluating Claimant's subjective symptoms.

Moreover, the ALJ considered that, despite Claimant's headache pain, Claimant watched television, performed personal care independently and without reminders, shopped, drove, and helped care for his five children. (Tr. at 298-300, 317-18). Claimant argues that the fact that the ALJ did not mention each of his qualifying statements and alleged limitations that the decision is flawed. However, there is a stark difference between an ALJ not explicitly mentioning every scintilla of evidence, as the ALJ did in this case, as compared to an ALJ selectively citing certain pieces of evidence to present a false picture of the claimant's abilities, as the ALJ did in *Arakas* and similar decisions. While an ALJ must reconcile material conflicting evidence, there is no rigid requirement that an ALJ cite or discuss each one of Claimant's statements or every piece of evidence in the record. *Black v. Saul*, No. 3:19-CV-00680, 2020 WL 2115673, at *17 (S.D.W. Va. Mar. 13, 2020), *report and recommendation adopted,* 2020 WL 2114370 (S.D.W. Va. May 4, 2020); *Smith v. Saul*, No. 2:19-CV-00747, 2020 WL 6265981, at *12 (S.D.W. Va. Mar. 3, 2020), *report and recommendation adopted,* 2020 WL 6264022 (S.D.W. Va. Oct. 23, 2020); *Alex S. v. Saul*, No. 5:18-CV-00094, 2020 WL 3118407, at *7 (W.D. Va. Jan. 16, 2020); *Petrie v. Saul*, No. 3:19-CV-00510, 2019 WL 7606380, at *10 (S.D.W. Va. Dec. 30, 2019), *report and recommendation adopted,* 2020 WL 355015 (S.D.W. Va. Jan. 21, 2020).

In addition, unlike *Arakas* and other similar cases, although the ALJ noted that Claimant was not in acute distress during medical appointments and did not require emergency treatment for headaches, the ALJ did not discount Claimant's subjective complaints based on the lack of objective evidence, but instead properly considered numerous factors, including Claimant's daily activities. *Cf. Arakas*, 2020 WL 7331494, at *8 ("Thus, while the ALJ may have considered other evidence, his opinion indicates that the lack of objective medical evidence was his chief, if not definitive, reason for discounting Arakas's complaints."). In addition, the ALJ's statement concerning the lack of objective evidence is correct in this case, as compared to *Arakas* in which the ALJ erroneously concluded that there was no objective evidence of fibromyalgia when such objective evidence was present in the record. *Id. Arakas* is further distinguishable because the ALJ did not overstate Claimant's improvement from treatment. The ALJ candidly explained that Claimant continued to report frequent headaches despite some improvement from Botox injections and Imitrex. (Tr. at 27). The ALJ was very clear that Claimant sometimes reported as few as five headache-free days per month. (Tr. at 28).

Therefore, although Claimant disagrees with the ALJ's analysis and conclusions, he does not identify any material conflicting evidence that the ALJ failed to consider or any misstatement of the evidence of record. Rather, as the Commissioner argues, Claimant simply asks the Court to reweigh the evidence and reach a different conclusion than the ALJ. As previously explained, the Court cannot substitute its judgment for the ALJ. *Hays*, 907 F.2d at 1456. Rather, the Court can only scrutinize the evidence to determine if it is sufficient to support the ALJ's conclusions. In this case, that standard is unequivocally met. As shown above, the ALJ properly considered Claimant's statements,

his daily activities, and the medical evidence to evaluate the intensity, persistence, and severity of Claimant's reported symptoms. The ALJ did not rely solely or primarily on the absence of supporting objective evidence when evaluating Claimant's statements, instead, considering the whole of the record. Claimant offers nothing to rebut the ALJ's well-reasoned conclusions and specific citations to the record. Therefore, the undersigned **FINDS** that substantial evidence supports the ALJ's subjective symptom analysis.

### B. SSR 19-4p

Claimant next argues that the ALJ "committed reversible error" in failing to analyze his headache impairment under SSR 19-4p or, alternatively, the Appeals Council committed "reversible error" in not granting review to evaluate Claimant's headache impairment under that ruling. (ECF No. 15 at 12-13). Both arguments are without merit. Claimant fails to explain how consideration of SSR 19-4p would have altered the decision in this case. Furthermore, SSR 19-4p explicitly directed that the ruling was not to be applied until its effective date of August 26, 2019. SSR 19-4p, 2019 WL 4169635, at *8 n.27. Therefore, the ALJ could not have considered it given that his decision was issued on February 5, 2019.

As far as the Appeals Council not granting review in light of SSR 19-4p, the Appeals Council will only review a case if:

(1) There appears to be an abuse of discretion by the administrative law judge;

(2) There is an error of law;

(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence;

(4) There is a broad policy or procedural issue that may affect the general public interest; or

(5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. §§ 404.970(a), 416.1470(a). Claimant fails to demonstrate that any of those factors were satisfied in this case. The Appeals Council applied the law in effect at the time of its decision, which necessarily included SSR 19-4p, and it found no basis to review the ALJ's decision. (Tr. at 3). Therefore, the undersigned **FINDS** that the ALJ correctly applied the law in reaching his decision, and the Appeals Council correctly applied the law in declining review.

## VIII.  <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF Nos. 15); **GRANT** the Commissioner's request for judgment on the pleadings, (ECF No. 16); **AFFIRM** the decision of the Commissioner; **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed

Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Berger, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**:  January 6, 2021

Cheryl A. Eifert
United States Magistrate Judge